# Marian Mining Company v. Bowling et al.

(Decided June 19, 1931.)

HOGG & MOORE and ARTHUR T. BRYSON for appellant.

T. E. MOORE and FRENCH HAWK for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—
Affirming in part and reversing in part.

Bill Bowling and his employer, the Marian Mining Company, had both accepted the provisions of the Workmen's Compensation Act (Ky. Stats., sec. 4880, et seq). Bowling died as the result of an accident occurring on September 27, 1928, and arising out of, and in the course of, his employment. P. W. Bowling, the father of Bill Bowling, on behalf of himself and the three half-brothers of the decedent, applied for compensation to the Workmen's Compensation Board, which rejected their claim. On appeal to the circuit court the order of the board was set aside, and the board directed to enter an order or award allowing compensation at the rate of $5 per week for a period of 335 weeks, less the usual waiting period of one week. From that judgment this appeal is prosecuted.

The evidence heard by the Compensation Board may be summarized as follows: Some four or five miles from the coal camp decedent's father owned a small farm, which was under cultivation, but had not been paid for. The father testified that decedent lived at home with him and came home sometimes Saturday night, and sometimes twice a week. During the last year of his life decedent contributed his whole support. He was only 50 years old, but was not able to do much of anything on the farm and depended on decedent for his groceries, and

"such as that," but he named no amount. He also testified the decedent worked at Elk Creek, and sometimes at Meems-Haskins, when the Marian Mining Company was not working full time. E. S. Bowling, grandfather of the decedent, testified the decedent came home occasionally and helped in the corn. Outside of overalls and things he wore, he contributed all to the support of his father. Witness himself had gone down and drawn decedent's scrip, sometimes over $5 and sometimes over $8 or $10. Decedent sometimes got whatever they needed. Some of them got it on his work. It took about $3 a day, and decedent always came with what they needed, but which was only the opinion of witness. Decedent was his father's main support and dependence, and he helped his father ever since he was big enough. Tandy Jent. brother-in-law of the decedent, testified that decedent was loading coal at 35 cents per ton. He did not know how much decedent furnished his father but he furnished some stuff. He and decedent took a load out there twice on a horse. He and decedent would carry the stuff through the mines to his house, and old man Bowling would come and carry the stuff off on horses. This happened every week or so. He had seen decedent give his father money twice. He had Bony Jent write his father a check for $10. Decedent stayed at his house and paid little or nothing for board. He did not charge decedent because he was his brother-in-law. Decedent used some of his wages for clothing, smoking tobacco, and what little he paid witness. The balance went to his parent. Bony Jent testified that decedent worked some at Rockhouse and some at Marian. Decedent formerly worked for him at the Rockhouse Coal Company. He paid decedent $3.50 a day when decedent boarded himself, and $2.50 a day when he boarded decedent. Decedent would take an order to James Morton and buy groceries and say that he would take them to his father. About two weeks before decedent died he gave decedent's father either a check for $10, or paid him $10 in money, he did not remember which. Bony Caudill testified that he lived in about half a mile of the Bowlings, and saw decedent carrying stuff past his house. Sometimes decedent had meal, or a sack of sugar, and sometimes potatoes, bacon, and lard. He also saw decedent working on the Bowling farm. Nancy Craft testified that she had been at the Bowling home and saw decedent bringing home groceries. Willie Walters also saw

decedent packing eatables in the direction of the Bowling home.

On the other hand, W. B. Combs, bookkeeper for the Marian Mining Company, testified that the record of the days that decedent had coal dumped showed that decedent received a general average of $1.85 a day for each working day, and the total wages earned by him from August 17 to September 27 amounted to $38.50, of which he was paid $34.

The above recitation of the testimony relating to the dependency of applicants and if any, to what extent, is exceedingly vague, unsatisfactory, and uncertain, in that it consists chiefly in conclusions of the witnesses instead of facts upon which a correct determination might be made. It is, however, sufficient to show that at least the father of the deceased was dependent upon his deceased son to some extent, there being no testimony to the contrary, except that which might be deduced from the earnings of deceased from his employer as testified to by Combs, at the time of his 'death, as compared with the probable expense of living. However, it also will be remembered that applicants' testimony developed that the deceased engaged in other employment to some extent at least while working for such employer, and that within the twelve months preceding his death he engaged in other and more steady and, perhaps, more lucrative employment than that in which he was engaged when he was killed. It is our conclusion, therefore, that the circuit court correctly adjudged that the board, in determining that no dependency had been proven, was in error, since there was *no* evidence to support that conclusion. In such circumstances courts having jurisdiction to review awards are authorized to ignore such unsupported findings of fact by the board, and they are not precluded from doing so by section 4935 of our present Statutes, which is part of our Workmen's Compensation Statute. However, that section does withhold from any reviewing court the right to disturb the board's findings of fact in all cases where there is a contrariety of evidence. There being none in this case as to the fact of *some* dependency of the father of the deceased, the board erred in finding to the contrary.

The extent of such dependency is left in greater obscurity by the testimony adduced, and it is so vague as to render it almost impossible to reach a correct determination. Under the section supra, which is section

52 of our Workmen's Compensation Statute (Ky. Stats., sec. 4935), courts in reviewing awards of the board "shall enter judgment affirming, modifying, or setting aside the order, decision or award, or in its discretion remanding the cause to the board for further proceedings in conformity with the direction of the court. The court may, in advance of judgment and upon a sufficient showing of fact, remand the cause to the board." Under that provision two lines of opinions have grown up in this court, (1) wherein it was held that the reviewing court might, under the circumstances presented in the particular case, enter a final judgment different from the award under review, and (2) wherein it was held that it was the duty of the reviewing court when it concluded that there was error in the award to remand the cause to the board for further consideration by it.

Cases representing both classes are cited and referred to in the very recent case of Broadway & Fourth Avenue Realty Co. v. Metcalfe, 230 Ky. 800, 20 S. W. (2d) 988. See, also, opinion in the case of Hardy Burlingham Mining Co. v. Hurt, 32 S. W. (2d) 460, decided May 1, 1931. Cases in class (1) will be found to be those (a) wherein only a question of law was involved and the board erroneously determined it, or (b) where there was no contrariety of testimony and the proof was clear and certain as to the facts, but the board found the facts contrary thereto. Cases in class (2) are those where there was a contrariety in the testimony so as to present an issue of fact to be determined in the first instance by the board, which is the only agency erected by the law for the purpose of making such findings, when there is a contrariety of testimony touching the disputed facts. A reading of the statute inevitably creates the impression that it was the intention and purpose of the Legislature in its enactment to lodge with and vest in the board that it created therein the duty and primary authority to resolve all contradictions in the testimony, and to determine the facts therefrom, and then render such an award as the facts so found would authorize under the law. If a mistake should be made as to the law applicable to the facts found, the reviewing court may correct it and apply the enacted law to such facts; or, if facts are found by the board for which there is no supporting testimony, then the court may so adjudge and direct the appropriate action to be taken. This is essentially a case that should be remanded to the board for the purpose of

ascertaining the facts bearing upon the *extent* of dependency as an element in the award to be rendered. Also to find the facts as to the earning capacity of the deceased, which is another element in fixing the amount of the award to be rendered.

The testimony, as we have seen, is, upon both issues vague and uncertain, consisting largely in conclusions of the witnesses, and for which reason the board should again consider it and upon the testimony adduced, or any additional that either party may offer, render such award as the facts may justify. Other cases supporting that practice are Scuddy Coal Co. v. York, 233 Ky. 497, 26 S. W. (2d) 34; Noe v. Noe, 229 Ky. 490, 17 S. W. (2d) 405, and others cited in those opinions. In brief of learned counsel for appellees, it is earnestly argued that this is not a case that should be remanded to the board for further consideration, and, in an effort to differentiate it from the cases supra, wherein such remand was approved and directed, it is said that in those cases "there was a question as to what extent of dependency, and this court held that the extent of dependency was a question of fact that should be determined by the compensation board. *There is no such contention here.*" Such *is* the exact situation here, and the italicized sentence embodies a clear misconception by counsel of the crucial and only contention that is involved in this case, since both elements forming the extent of dependency is more confused and uncertain from the testimony heard at the hearing before the board, and only which was considered by the circuit court (i. e., the earning capacity of the deceased and the per cent thereof that he contributed to the support of his dependent), than in any of the cases wherein we directed the remanding of the cause to the board. We, therefore, conclude that the court erred in adjudging the particular award that should be rendered under the vague testimony introduced, but that the cause should have been referred to the board for the ascertainment of such necessary facts, following our approval of the courts finding that the fact of some amount of dependency had been proven.

Wherefore the judgment, in so far as it adjudged that *some* dependency of the father of the deceased was proven, is affirmed; but the judgment, in so far as it rendered an award and directed the Compensation Board to adopt it, is reversed, with directions to set it aside and refer the cause to the Compensation Board for proceedings consistent with this opinion.